Good morning, everyone. Please be seated. And we'll call the first case, 14-2071, People vs. Militia Lawyer. Would both attorneys that are going to be arguing step up and identify yourselves for the record? Good morning, Congress. My name is John Braven. I'm going to be arguing along with my partner, Todd Hughes, who's going to be doing the rebuttal argument. Okay. Interesting. What was your name again? My name is John Braven. Braven. Okay. Mr. Braven, good morning. Good morning, Your Honor. Good morning, Your Honor. Matthew Connors on behalf of the people of the state of Illinois. All right. Mr. Connors. All right. Before we proceed, each of you will have approximately 15 minutes to present your argument. And from that, co-counsel may save some time for rebuttal. All right? Very good. All right. Thank you, Your Honor. You may proceed. May it please the Court. My name is Jonathan Braven, and I, along with Todd Pugh, represent the defendant appellate in this matter, Melchor Lopez. We're here because the polygraph evidence that was admitted in the trial court made the proceedings against Mr. Lopez fundamentally unfair. Make no mistake about it, the jury that convicted Mr. Lopez heard the results of the polygraph exam that was administered to him. On cross-examination, when the defendant was testifying, the state moved to admit polygraph evidence in cross-examination. The trial court ruled that the polygraph evidence could come in, but not the results. And then what happened was the state went into the results on cross-examination. How did they do that? Well, on cross-examination, they elicited testimony from the defendant that one of the law enforcement officers had told him that he should not tell any lies and that he was not going to beat the machine. And then in its own rebuttal case, Detective Santoyo testified that he conveyed the results of the polygraph test to Mr. Lopez, that when that happened, the defendant slumped his shoulders and head in defeat, that he told him it was his opportunity to be honest with law enforcement, and that at that point, there was a different statement elicited. Mr. Brayman, were these specific points that you're now referencing all objected to or not? Well, they were objected to by... I know you objected to the polygraph. Right. And it was in your motion for a new trial, too, wasn't it? We didn't represent Mr. Lopez in the trial court. The trial counsel did object to the admission of polygraph evidence. It was also in the motion for a new trial. All right. So there was a contemporaneous objection. When the evidence was elicited about the results being conveyed to Mr. Lopez, his demeanor, his reaction to the results, the testimony from Detective Santoyo that it was his opportunity to be honest with them now, that he shouldn't tell lies to them, there wasn't... In the motion for a new trial, was there an objection that the state used or violated the motion and eliminated by basically telling the jury in so many words that he didn't pass this test? It was preserved as to the issue of the polygraph. There was no contemporaneous objection. When the testimony was elicited and there was no contemporaneous objection, then the state, in closing argument, made a thematic argument about lie detection and used the words truth detector four times. And Mr. Lopez talked about at that point when the results were given to the defendant and the polygraph was given to the defendant, the jig was up. The jig was up. And there was no other conclusion to draw from that argument coupled with the testimony other than Mr. Lopez failed the polygraph. And at that point, what is the defendant to do? He's testifying on the witness stand. He's testifying to the facts and circumstances of his experience with the law enforcement. And at that point, the state moves to move into evidence, generally inadmissible evidence of polygraph evidence. There is a profound concern in our court system for this type of evidence because, one, it's unreliable and, two, it usurps the function, the basic function of a jury to be the fact finder. How are we reviewing the court's ruling to allow testimony regarding the taking of the polygraph on appeal? Are we reviewing it de novo? Is it abuse of discretion? What would you say, Mr. Brayman? Well, Judge, I think under any standard of review, and certainly the trial court's determination was a discretionary one, but that this court can find under Baines, the Illinois Supreme Court Baines and Garg, that this type of evidence is so prejudicial and it infringes so fundamentally on a defendant's right that it is plain error. Well, let me ask you something about Baines. Is that the one you're citing? Yeah, Baines. And Garg. That was before Jefferson. And those cases didn't actually involve a defendant's claim that his statement was involuntary, did they? No, Judge, but the court in assessing the evidence in those cases, I mean, in Baines, there was a stipulation that those results could come in, and under plain error, they said that it's so prejudicial. Well, they did say that in Garg, that it was plain error for even a witness to be examined. Now, let me ask you this. Jefferson sort of takes a step away from those cases, doesn't it? The court said that the State could use the taking of a test, a polygraph, when the defendant claims that his confession was coerced. Sure, but Judge, I think that Jefferson followed Triplett in both that the fact of the examination was the relevant consideration, not the results. And what happened in this case is completely different. The results were right in front of the jury that he had failed this exam, and this was not a case of overwhelming evidence. There were unsubstantiated allegations of a minor complainant, and there was two notes. The jury deliberated for multiple hours. There was a note that they wanted to view what is called a victim-sensitive interview, a videotaped interview. And did they see it? They did. It went back to the jury. And they saw it initially, too, didn't they? They did. All right. They viewed that a couple of times. They did, and they also came back with another note that said, do we have to be unanimous on both counts? And I think that goes to the strength of the evidence as not being overwhelming. So, Judge, Your Honor. Well, when you say it was unsubstantiated, you're talking about what? There was no physical corroboration of the allegations. Well, now let's talk about the facts, though. Why would there be any physical corroboration in a case like this? Well, we see physical corroboration in cases like this all the time. Well, what are you talking about? This was a penetration with a finger? What case could you cite, if you would, where there was physical evidence presented? Any kind of physical evidence? Well, I've certainly seen them, Judge, but just in terms of corroboration. In terms of what? Physical, like, scratches or something, or are you talking about DNA? Well, there could have been DNA. There could have been. Are you familiar with any case that you would refer us to? Judge, I wouldn't refer to any cases, but I'm just, for the general proposition, that there was no corroboration other than the allegations themselves. And so, Judge, the issue that we're pressing here is obviously the polygraph evidence. Most recently, this court in Hughes expressed grave concerns about the law enforcement tactic of using a polygraph exam to extract an inculpatory statement. And the state talks about the Hughes case as being reversed by the Illinois Supreme Court. Well, it was, wasn't it? It wasn't affirmed in any regard. It was reversed, and the trial court was affirmed. So I don't know how much that discussion is valid. Well, but it was reversed on a jurisdictional issue about whether the defendant had preserved the alleged error for review. They didn't quarrel with this court's concern over using polygraph evidence as a tactic of law enforcement to elicit an inculpatory statement. So it didn't actually reach the issue that we are pressing here in our appeal. How would we, in your opinion, write this in light of the Jefferson case that did permit the introduction of the taking of the polygraph and that the standard of review is abuse of discretion? That the testimony coupled with the prosecution's argument and eliciting testimony of the results of the polygraph exam was error. And that the restraint that the courts have shown in terms of this unduly prejudicial evidence needs to be both exercised by trial courts and prosecutors. And so I think the facts here are distinguishable. And if the court has no other questions, I will say. Well, the only thing I want you to tell us about is the state suggests that as far as the argument, there was never any objection to any of the remarks. They were made in rebuttal in response to a closing argument that specifically honed in on the fact that the complainant was fabricating, lying. Judge, there was an objection to preserve the issue of the admission of the polygraph evidence and results and the state went too far on its argument and its eliciting testimony about the results. And so under, I think, any... Well, how far could it have gone? The defendant comes in and says my statement was coerced, right? The defendant said I was told that if I just agreed that it was an accident and put that in writing, they'd let me go. That was the defense's theory as to why he signed that statement, right? Correct. Okay. And so Jefferson says, in a lot of cases, say the state has the right to present rebuttal evidence to rebut that statement. The polygraph evidence, evidence at least concerning the potential taking of a polygraph, is certainly fair game under Jefferson. What could the state have done here? And where did they exactly go too far? Well, they could have exercised greater restraint in the eliciting of that testimony because... Tell me how. Well, in some cases we've seen these polygraph exams be called interviews, an interview or a technician has been made references because of how prejudicial this testimony is to a defendant because of its quasi-scientific and technical nature and the fact that it goes, in the jury's mind, to the defendant early witness's credibility. So the restraint that should have been exercised, certainly not arguing that the jig was up and the detective knowing the constraints to testify that, you know, that at that point it was time for him to tell the truth, that his demeanor was in defeat. There was no other conclusion for the jury to reach other than that he had failed the test that was given to him. I'm still having trouble seeing where we could slice this down the middle, though, and say this part was not okay, this part was. Sure. I think when we talk about the results and we go into evidence... He didn't say the results. Well, he said that the results were conveyed to the defendant and now it was time for him to tell the truth and the prosecutor in closing argument said the jig was up. So that's a failure. I get the closing argument. I'm thinking of the testimony itself. I understand your point on the closing argument. On the question and answer, I mean, Jefferson has said this is fair game. Don't say the results. Well, they didn't say the results here. Where exactly did they go wrong? Well, because Triplett and Jefferson talk about the very fact of the examination as being a circumstances relevant, and I think we went too far afield here. They did go too far afield because the results were elicited and there was no other conclusion for the jury to make. So if there's no other questions, I'll save time for rebuttal. All right. Thank you, Mr. Frick. Mr. Connors. May it please the Court. Matthew Connors on behalf of the State of Illinois. Defendant has chosen to focus this Court's attention solely on the issue regarding the polygraph examination. And at the outset, the people note that on page 42 of his brief, defendant has conceded that Jefferson controls and his remedy is to ask this Court to overrule Jefferson. Taking a step back from the remedy he requested, as both Justice McBride... Did Jefferson say that evidence of the results of a polygraph could be revealed or just the fact that a test was... Jefferson explicitly states that a prosecutor may use a polygraph examination, and that case was the submission to a test, as a shield to rebut a claim by defendant. What I mean with my question, I'm sorry I wasn't clear, is the fact that the test was given and not the result of the test should be given a trial. Correct. Now, when questions and testimony is given that after the test was given, in response to that there was shrugging and sloping of shoulders, doesn't that kind of indicate the result as opposed to just the fact that the test itself was given? To the extent that the defendant has maintained on appeal for this Court, the first thing out of his mouth was the result was given. The people stress repeatedly that that was never the case. At no point in time did any witness indicate this defendant failed the polygraph examination. The reason why the circuit court and the prosecutors stress the fact that the result was not given is because the limited purpose of polygraph examination is to explain a defendant's defense that the statement was given. Well, it's really to explain the procedure that took place during the course of the confession, not to give any results. The basis that this, A, happened, for example, a cop says, well, I talked to a witness, is not what the witness said. After I talked to the witness, I did such and such. In this case, we have a situation where you say a polygraph was given, and after the polygraph, I gave the result, and his shoulder is slumped. Doesn't that step in and tell the jury he failed the polygraph? If the Court's question is reliant upon the jury's understanding the result, that is a clear distinction than the evidence actually being admitted. We're talking about an inference raised by the testimony. And the only reason this is relevant is because the defendant has chosen to present a narrative in the course of his case that not only is the statement true, not only is the statement untrue, but also that the statement was a result of coercion. Exactly, and that's my point. Doesn't Jefferson say, well, if he claims that he was tortured or coerced, then we can give a recount of everything that took place when he was taken in custody. And we can also recount that we took a polygraph. But then we can't go further, can you, and say, well, we gave it to him, and then he slumped his shoulders. Is that permissible? Yes, it is. That's what we're talking about. And what is the authority for that? Jefferson in and of itself. But Jefferson was kind of different than any case in that in Jefferson, the defendant was charged with attempt murder of her 7-week-old child, an aggravated battery, and subsequently found guilty. But in that case, the issue, or rather the testimony, was that she was scheduled to take a polygraph. Correct. But it was never given. Correct. And the court said that in that case, and the threats made to her were that the child was going to die, and if she just took the test or gave a statement, she'd be able to see her child. Those were her claims, and in that case, the court allowed the introduction of the fact that a test was scheduled. There was no result there, so the court wasn't really concerned with whether or not the state had gone overboard and actually put in the results. Well, that is a valid distinction. It's a distinction without difference, because the underlying premise of the Jefferson division, if we quote from that decision, it states that it was to correct a misleading impression about circumstances surrounding the defendant's conviction. Sure. And I think Jefferson also, you know, went back to a previous decision where one of the justices said that, and this is maybe, I don't know, 20 years before, that there could be a circumstance in which a polygraph test being given could be admitted in rebuttal to a claim of a involuntary confession. So there's precedent. The question is, in this case, the trial judge said you can't go into the results. Correct. And counsel is arguing that the state went into the results and that the arguments about the truth detector, truth detector, I don't know if that was used twice or three times, and then this comment about, you know, so we take him for a test and then he knows, you know, he takes the test and then the jig is up. So how do you respond to those comments that are sort of a veiled reference, if you will, to a lie detector, and that he flunked so the jig was up? Let's be clear. There is no assertion that the result was given. So the question is now inferences. Is the jury supposed to draw the inference? Yes. And the reason why the jury can draw the inference is because of Jefferson, where they say that the submission of the defendant to a lie detector test. In that case, in Jefferson itself, it was merely the threat of a lie detector that caused the defendant to confess. In this case, this defendant took the lie detector test. But that's entirely different, isn't it? I mean, saying that somebody is afraid, that he agreed to make a statement after being offered a polygraph, says whatever it says about him, that he's considering the idea that he's lying, he doesn't have a truthful story to tell, and it will be caught if he takes a polygraph. That's entirely different from conveying the result of the polygraph to him as the detective testified he did, and then the defendant having a reaction and then agreeing to confess. I mean, Jefferson didn't actually get into the reliability of the polygraph. It was just the defendant's reluctance to take it. Here, we're talking about the very thing, a polygraph, which the courts have, even Jefferson said, we don't consider it reliable. People have never asserted that the question of reliability is at issue in this case. Again, it is not a question as to whether or not the polygraph was used as substantive proof of this defendant's guilt. Even the closing arguments all tie the polygraph to the voluntariness of this defendant's conviction. So for this court to accept the defendant's argument... The gig was up. He knew that the gig was up. What does that have to do with the voluntariness of his confession? That explicitly tied to the remarks that this statement, as the defense counsel argued, is 100% false, and he only gave the statement because the detective said, if you accept this, you can go home, nothing will happen to you. So here we have a defendant who, in his testimony, comes and says, I was mistreated by the police. I was told to confess to something that didn't happen. The statement that was taken by the assistant state's attorney, I did not review. And then, and only then, did the people introduce evidence to say, the narrative as presented by the defendant in his testimony is incredible. And what extrinsic factor do we have? We have the introduction of, in this case, a polygraph. And based upon the introduction of that, the defendant's narrative changed. Mr. Connors, did the trial judge in some way allow what you did, in that the order says that the circuit court determined that you could go into his agreement to take the polygraph, that the defendant agreed to take the polygraph, that the first time that they could schedule it was not until August 10th, because there was some suggestion about him being in custody for 48 hours, and that the defendant took the polygraph examination, and that afterwards, was the court saying that the officer could inform him of the results, or am I, I don't know, that's what you're sort of suggesting. I think you don't have that as part of a quote. The record, the reason people truncated the quote at that point was because the names given by the officer, it was officer, detective, the two were changed. So the people truncated it merely for the purposes. So did the judge say that you could argue or say that the officer informed him of the results? The circuit court indicated that the defendant could be told what the result was, but the jury was not to be informed of what the result in itself was. So the circuit court was attempting to divine a line where they said, you can say we told you what happened as a result of this polygraph examination, but state's attorneys, you are not permitted to say this defendant failed the polygraph examination. Were you then permitted to tell the defendant's reaction to hearing the results? Yes, to the extent that the defendant's reaction was an addition of the result. No, it's an addition of the unreliable nature of his defense of coercion. So the test disproved his testimony? The test was relevant to negate the assumption that the defendant's testimony was in and of itself coerced. So again, it's not a question as to the admissibility of this statement. Notably, this is not presented in the posture of a pretrial motion, which is what, for whatever it's worth, the Kavanaugh-Huston decision was prevented for. We're discussing whether or not a defendant is free to get before the jury and tell a tale of woe about all of these awful things that happened to him. And then when there was an intervening factor, which accounts for a shift in that narrative, it would deprive the people of using that, as the Supreme Court has talked about, as a shift in narrative. From my understanding, Jefferson basically says you can, to rebut the implication that he was coerced, you can tell what happened during his arrest, which resulted, but you're going further than that. You're saying he decided to confess because we gave him a polygraph, and he got the results and gave a different story. Can I inquire as to the distinction? Because the defendant's motivation to confess is the defendant's motivation. The people should not be deprived of explaining what the shift in that motivation is. So to the extent that this Court might be somewhat troubled by the fact that testimony came in that the defendant's shoulders shrugged, that does not negate the fact that it was essential for the jury to understand that the entire theory of coercion could not stand in light of the Supreme's caution because it presented an inappropriate impression of circumstances. We'll get into all of this discussion if the evidence has come out where we gave him a polygraph, and after the polygraph, he decided to confess. But we have something that's troubling to me. We gave him the polygraph, and he slumped down and looked defeated. We're getting to the results at that point. That's the troubling point. As has been argued earlier, there's no physical evidence. I don't know that there could be, but it's one testimony against another. But it's not one testimony versus another. As the people noted in their brief, there is no case that this defendant has ever cited to say that DNA evidence would have been presented in this way. Well, there's not guilties maybe. Excuse me? Maybe they are not guilties. I don't think that a defendant who has the opportunity to present authority saying that I should have been acquitted would fail to do so. And in fact, the authority that he has presented this court with in the context of his reasonable doubt challenge stemmed from a victim who was 54 years old at the time, was under the influence of crack cocaine, a case where that victim had a motive to fabricate and falsify the testimony. And alternately, we have the Rivera decision cited in the defense brief 31, which referred to not only a DNA lack of evidence, but a DNA exclusion. Fingerprints that were found not tied to the defendant and testimony that was reliant upon a jailhouse informant. In this case, we have... Well, there's a reason that these other witnesses were permitted to testify in this case. Law has long recognized that a statement made to a person shortly after an event of a sexual assault is admissible. And in this case, there were certainly multiple recountings of this. But the question here is, did the state go beyond the ruling? Actually, was that actually preserved? I'm not sure. And were the arguments focusing upon the results by this reference to truth detector, truth detector, truth detector, which, let's face it, people refer to the polygraph as a lie detector often, not necessarily a polygraph. So the question is, did the state go beyond what was permitted by Jefferson in any of the other cases? And that's really the issue here. To the extent that this Court inquired about the closing arguments, it's necessary to discuss the context in which they were given. First, as Justice Ellis noted, the closing argument by the defendant was, this account was fabricated. Not only was this account fabricated, the statement was 100% false. So because those statements were made in opening argument, the prosecution was entitled to respond. And they did so with two now-challenged facts. First, the phrase truth detector. Truth detector only appears vis-a-vis the comments regarding those intrinsic facts in the victim's testimony. Why didn't the prosecutor select that word? Who knows? In all candor, most state's attorneys have phrases that they use. In this case, though, we had a polygraph or a lie detector. Correct. To the extent that it was in front of the jury. Is this a fiction where the courts say you can use the polygraph, but you can't use the results? What's the point of explaining that the fact that a polygraph test was given can be told to the jury in every single case where they're claiming an involuntary confession? Well, isn't the inference in every case, whether you say it or not, that the person flunked the test? The Supreme Court has made it clear that the inference is why it's relevant. Is what? Is why it is relevant. The Supreme Court has said it is necessary to introduce that to present a false impression of a victim. But haven't they drawn the line at the taking of the test and that you don't go beyond that? You don't go beyond what the result was? And isn't that kind of a fiction? No, it's not a fiction because there is a quantitative difference between an assistant state's attorney or a judge informing the jury, this defendant failed a polygraph examination, as opposed to the very precise language which was said, we confronted this defendant with results of it. And after that, the defendant changed his story. Well, what's the inference? It's the same inference. What is it? He lost the test. That's why he changed his statement. Isn't that the inference? I'm just saying I think this is kind of a fiction that's being engaged in, and I'll ask opposing counsel. But the court definitely said you couldn't go into the results. They said that in Jefferson. Correct. They said that before when there was a suggestion made 20 years earlier in this, I forget the name of the Supreme Court case, maybe it was Triplett, where the justice pointed out that there could be an occasion where the taking of a test could become relevant if there was a claim that the statement was involuntarily given. Following up on your questions regarding the closing arguments, people would stress that those arguments were not objected to, they're not preserved. They would only be vied through the doctrine of plain error. And, again, the closing arguments as referred to by this defendant vis-à-vis the polygraph examination, again, were directly responsive to the claim raised by the defendant in his closing argument, did not explicitly divulge the result of that argument, and were consistent with the principles articulated in Jefferson. So for all those reasons and those stated in the people's brief, we ask that you affirm the defendant's conviction. Thank you. Thank you, Mr. Conner. Good morning, Justices. Thank you for allowing this much more orthodox procedure. I did just want to make a few comments to the Court and would bother and entertain any additional questions. And would you identify yourself again? Certainly. Todd Pugh, P-U-G-H, appearing on behalf of Mr. Lopez. Your Honor, in many respects, this case picks up where this Court left off in Hughes. And I realize the State cites in their brief that Hughes was later overruled after we filed our opening brief in this case. But if you read the concurrence in Hughes in the Illinois Supreme Court, the three Justices there were actually quite critical of the majority in that case because they never really reached the issues that this Court firmly visited in Hughes. What they did was they took a forfeiture argument and they resolved the case on that. But it doesn't change the fact that this Court expressed some deep concerns of how polygraph examination might be used with custodial interrogation. In this case, we had a non-English speaking defendant who was in custody for 48 hours. At the end of that 48 hours, he's administered a polygraph examination, gives an inculpatory statement at that point in time. And then procedurally speaking, when you look at this case, it's not until after the defendant testifies on direct examination that the Court rules that the polygraph examination can come in. He's subjected to cross-examination, and I'll quote it, During that cross-examination, the defendant's question is asked, and he said, I told you not to lie because you're not going to beat the machine. That is direct evidence that it was conveyed to Mr. Lopez that he failed the test. And that's the first time. Then you go into the rebuttal case. When Detective Santoro, I know the courts have already visited that, Detective Santoro very clearly told the jury he conveyed the results of the polygraph examination, defendant's head and shoulders dropped, and then he tells them it's now time to tell the truth. Wells, did you argue in your motion for a new trial, and I know you worked at the Trial Council, did you argue these specific things? The Trial Council did not, and that's why we were asking the Court to entertain a plain error analysis on this issue. But you did in your reply brief. You didn't acknowledge it in your opening brief. We did, Your Honor. We did. The important thing to remember here is that I think from a broader policy perspective and looking just beyond this case, and the Court has already picked up on this, what is a criminal defendant to do under these procedures once the jury is informed that Mr. Lopez failed the box, so to speak? Well, what do we do in terms of Jefferson? I think the Court adheres to Jefferson, and first of all looks at Jefferson for what it is. It is an outlier case. As the Supreme Court even said in Jefferson, we still adhere to the principle that the results of a polygraph examination should not come into evidence going all the way back to METLOC. However, that is an outlier case. And the important thing to remember in looking at this case as opposed to every… Well, isn't it better to argue that the results were disclosed through various means and that that's the error that occurred here? That was plain, as opposed to calling Jefferson an outlier, which was based upon the previous case, and I think it was, I forget the name of it, and all Federal cases that all are in line with Jefferson, that when there is a claim that a confession was involuntary, the State can then, in rebuttal, present evidence that a polygraph was administered. I don't think it's an outlier. I don't think it's out of line. The question is, did the State in this case go beyond what is allowed currently? They most certainly did. They most certainly did, and there can't be any other argument. At least in two different instances of direct evidence, there was an absolute inference that this defendant failed the polygraph. And, of course, we're talking now in this case about a case which is a he said, she said, despite the fact there's no other evidence other than claim by a victim, denial by a defendant. That is the entirety of this case. But, Mr. Pugh, you have to acknowledge that in a case involving a nine-year-old girl at the time and the claim is penetration with his finger into her vagina. I don't know where you're going to come up with this claim that that's unsubstantiated and that there has to be something more. She makes an outcry. She makes it that evening. She makes it to her mother.  She makes it to the advocate. And all of those statements are admissible and were admitted in this case pursuant to statute and longstanding case law. But, I mean, I don't think that this case proceeds any other way or that there's some magical testimony that was required. May I just respond to that, Judge? Yes. When engaging in plain error analysis, as this Court must do on this issue, at least in part, you need to contemplate the strength of the evidence against the defendant. And just because this particular case is the type of case where we wouldn't expect the evidence to be strong, it doesn't take this type of offense and move it outside of plain error analysis. These are difficult cases. Absolutely. No doubt. They're difficult as an attorney defending them and they're difficult for prosecutors to prove. But that doesn't mean at the appellate level we make a special exception for a particular type of case. And I think there's complete agreement on that. And I understand your argument that the polygraph was, the result was clearly presented that was beyond what the Court had allowed and that there was plain error in having that occur. And there's a final bit of distinguishment here that I think must be considered by this Court. Unlike any of the previous cases, and even the cases that the Supreme Court and this Court and other appellate courts have alluded to, this is not a case of physical coercion. All the cases that precede the case before the Court were physical coercion claims. This is a coaching claim. This is just that the interpreter who was a Cook County sheriff came in, conveyed the results and said, say it was an accident, you can go home. It is a form of coercion under the Constitution. However, it is a slight coercion because the evidence was in this case that Mr. Lopez remained consistent throughout those 48 hours but for that one statement, I accidentally touched her private parts. That's the only thing that's added after the polygraph examination. So I think when you look at the previous cases where there were, and the Court has ever said, where there's claims of coercion, this is a slight, very, very slight coercion case. And quite frankly, as an experienced trial attorney, I don't think that I would have even brought a coercion claim in a pretrial motion in this case. Because what it is, it's a very, very slight coaching. It's not. Mr. Lopez in his testimony did not claim to be beaten, did not claim to be threatened, did not claim to be deprived of food, sleep, or anything along those lines. All it was was different people coming in and questioning him about the same event and then this interpreter who was a law enforcement officer telling him, hey man, just say it's an accident and you can get out of here. He says so in Spanish and that's what he does. You look at his statements and the evidence in this case, he's pretty consistent all the way through but for this one accidental touching. So I think when the Court considers this case versus previous cases, there was no claim of coercion. And finally, the State has suggested that these arguments, and it was four times that the prosecutor used the term truth detector. And in all the trials that I've tried, I've never heard the term truth detector ever used in a closing argument. But we hear it in this case. And Justice McBride picked up on it. It was a case with a lie detector involved and the jig being up. But there was no invited error. All defense counsel did was challenge the evidence. And if the State is going to take the position that in a he said, she said, if defense counsel is going to challenge the credibility of the State's witness, that means we open the door to comments on the lie detector, then that would mean the lie detector would come in in every single case. And that's not what I think this Court envisions. I don't think that's what the Supreme Court has ever said. And I don't think any Court before this day has ever put its imprimatur on this type of evidence being used in the way it was in this case, particularly in a case where the evidence is somewhat closely balanced. Thank you very much. All right. Thank you. Thank you, all of the attorneys. The case was very well argued, well briefed, and we will take it under advisement.